IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| AMIE R. FRIDAY,<br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>  Defendant. | Case No. 1:16-cv-01143-JEH |

**Order and Opinion**

Now before the Court are the Plaintiff, Amie Friday's, Motion for Summary Judgment (D. 16)[1] and the Commissioner's Motion for Summary Affirmance (D. 23). The Commissioner provided a supporting Memorandum thereto. (D. 24). For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.[2]

**I**

In March 2013, Friday filed an application for Disability Insurance Benefits (DIB) alleging disability beginning in September 2012. Her claim was denied initially and upon reconsideration. Friday requested a hearing before an Administrative Law Judge (ALJ) and appeared before ALJ Robert Schwartz in February 2015, represented by counsel. ALJ Schwartz issued a decision concluding that Friday was not disabled. (D. 10 at pp. 15-27). The Appeals Council denied Friday's request for review in April 2016, making ALJ Schwartz's Decision the final decision of the Commissioner. 20 C.F.R. § 404.981. Friday filed the instant

---

[1] Citations to the Docket in this case are abbreviated as "D. __."
[2] The undersigned presides over this case with the consent of all parties. (D. 14).

civil action, *pro se*, seeking review of the ALJ's Decision pursuant to 42 U.S.C. § 405(g) in May 2016. (D. 1).

## II

At the time Friday applied for DIB, she was 36 years old. She was living in a home, in Macomb, Illinois with her husband and their four children. Friday graduated from high school but has not worked since September 30, 2012. On the various SSA forms she submitted, she indicated that she has disabling epilepsy, fibromyalgia, and depression. Friday alleges her disability began on September 20, 2012.

At the hearing before ALJ Schwartz, Friday's legal counsel argued that while Friday may not meet the requirement for any Listings individually, the combination of her impairments—especially the fibromyalgia combined with epilepsy—have left her disabled. Friday testified that she has a driver's license but drives sparingly, in part because of her fear of having a seizure. (D. 10 at pg. 40). She has not discussed her potential to have a seizure while driving with any of her doctors. *Id.* at pg. 41.

Friday has past relevant work experience as a cosmetologist and a cashier. She stopped working as a cosmetologist in 2012 because she wanted to do something different. Shortly thereafter, she started working as a cashier and began having difficulty with pain in her legs and back. At this time, Friday said, she started having seizures as well. She ultimately quit working because she was going to doctor's appointments so frequently.

Initially, for the first few months, Friday was having "up to four to five [seizures] a day until [her doctors] got it controlled with the medicines." *Id.* at pg. 44. With her current medication, Topamax, she no longer has seizures. Friday did say, however, that there are times when she feels as if she is about to have a seizure. She remedies this by laying down for a brief rest and drinking a glass of water.

2

Friday can recover from these episodes in approximately 15 minutes and she estimates they happen approximately one to three times per month.

A number of Friday's treating physicians assessed whether she had multiple sclerosis. Friday stated that their findings were inconclusive at the time of the hearing. She said what bothered her most was pain in her legs, back, neck, and head. Friday testified that the pain is so severe that she has difficulty standing at times and nearly collapses when she tries to do so. On days when she can stand, the longest she can stand without experiencing an onslaught of pain as a result is approximately 15 to 30 minutes. Likewise, she cannot walk more than a few blocks, sit for too long, or lift more than around eight pounds without disabling pain ensuing.

Friday also said her hands have a tendency to go numb. This causes her to drop things occasionally. She further testified that that she struggles with balance from time to time, mainly due to dizziness, and suffers from migraines on average twice a week. Friday said she needs to take frequent breaks, but is otherwise capable of doing household chores such as dishes and laundry.

Overall, Friday said she has good days—those where she does not experience extensive pain—approximately two to three days a month. Most days, however, are bad days and she spends the bulk of those days in bed watching TV. *Id.* at pg. 56. A consultative psychologist diagnosed Friday with mild major depressive disorder secondary to physical issues. Friday said she knows she has problems with anxiety, but is not sure whether she suffers from depression. In addition, she said she struggles with memory loss.

In spite of the struggles she testified to, Friday also testified to engaging in a variety of daily activities, including some work activity, after the alleged onset of her disability. She reported that she cares for her children and gets them ready for school. Friday also said she does the laundry, reads, and watches television.

3

She indicated that she goes shopping regularly, spends a lot of time reading with her young daughter, talking on the phone, visiting with friends, and sometimes uses a computer. Friday is able to care for her personal hygiene needs independently.

Vocational Expert, James Ragains, also testified at Friday's hearing. Based on Friday's testimony, Ragains concluded that Friday had past relevant work history as a cosmetologist and a cashier. He stated that someone in Friday's position could perform light work, without climbing ladders, ropes, or scaffolding, while being required to climb ramps or stairs and balance no more than occasionally. The person would also have to avoid even moderate exposure to hazards such as unprotected heights or dangerous machinery. Ragains said that someone in Friday's position would be able to perform both of Friday's past jobs. He opined that someone similarly situated to Friday could not perform the job of cosmetologist within the same limitations previously noted and factoring in Friday's side effects from medication, her experience with pain, problems with anxiety, a limitation to performing simple, routine, and repetitive tasks on a sustained basis with only routine breaks, avoiding concentrated exposure to loud or very loud environments, and all allowable postural activities (ramps, stairs, stooping, kneeling, crouching, crawling, and balancing) limited to being only occasional. She could, however, perform the job of cashier and other similar types of jobs within these limitations. Ragains provided approximate figures for the availability of some of these types of jobs, both in the state of Illinois and nationally. He also stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles (DOT) and that the portions of his testimony not specifically addressed by the DOT were based on his professional experience.

### III

In his Decision, ALJ Schwartz determined that Friday had the severe impairments of fibromyalgia and a history of a seizure disorder. (20 CFR 404.1520(c)). *Id.* at pg. 20. He further determined, however, that Friday "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id.* at 23. While Friday complained about a variety of medical problems beyond those she listed in her initial DIB application, the ALJ found that the medical evidence regarding these other issues—including depression, anxiety, and multiple sclerosis—did "not cause more than minimal limitation in the claimant's ability to perform basic physical or mental work activities and is therefore nonsevere." *Id.* at pg. 22. She further found that "[t]here is no evidence that multiple sclerosis has been diagnosed." *Id.*

The ALJ reviewed Friday's medical records chronologically, including those from her neurologist, Anil Dhunanoted, and noted that Friday reported no new seizures since being on Topamax. *Id.* at pg. 20. After assessing Friday's seizure disorder, the ALJ ultimately concluded:

> [H]er condition does not meet the requirements of Listing 11.02 [] regarding convulsive epilepsy because she does not have seizures occurring at least once a month in spite of three months treatment. Her condition does not meet the requirements of Listing 11.03 regarding nonconvulsive epilepsy because she does not have seizures occurring more frequently than once weekly in spite of at least three months of prescribed treatment. Her seizures have been well controlled on Topamax [ ].

*Id.* at pg. 23.

Similarly, for Friday's fibromyalgia, the ALJ stated:

5

> The claimant has fibromyalgia, but there is no applicable listing. However the undersigned has considered this impairment under the requirements of other listed impairments, but find no evidence that it equals a listed impairment such as for inflammatory arthritis at 14.09 or major dysfunction of a joint at 1.02. The claimant is able to ambulate effectively and records do not demonstrate abnormalities upon physical examination that impose functional limitations that would equal a listed impairment.

*Id.*

> The ALJ crafted the following Residual Functional Capacity for Friday:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional non-exertional limitations. She can never climb ladders, ropes, or scaffolds. She can occasionally climb of ramps and/or stairs and balance. She must avoid even moderate exposure to hazards such as unprotected heights or dangerous machinery.

*Id.* In reaching this finding, the ALJ considered all of Friday's testimony and the evidence documenting her symptoms "in accordance with the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p" as well as "the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *Id.* Following protocol, he determined there was a medical impairment reasonably expected to produce Friday's symptoms. The ALJ concluded, however, that in evaluating the intensity, persistence, and limiting effects of Friday's symptoms, they were "not entirely credible[.]" *Id.* at pg. 24.

Specifically, the ALJ found "the degree of pain and limitation the claimant alleges is not consistent with the objective medical evidence regarding these impairments or her functional ability, including her reported daily activities." *Id.* He emphasized Friday's continued self-reported activities, including work, after her alleged onset date. The ALJ found her substantial list of activities consistent

with the range of light work formulated in his RFC. The ALJ supported his assertions by citing evidence from the record—namely, Friday's testimony and medical records.

The ALJ ultimately found that Friday was not disabled. He noted that "no physician has imposed any specific work related restrictions[]" on Friday and that "[t]he medical evidence reveals that her seizure disorder had been well controlled with medication since 2012 []." *Id.* at pg. 24. The ALJ further found that Friday's fibromyalgia, to the extent its effects are demonstrated in the medical records, are accommodated by his formulated RFC.

## IV

In her *pro se* Motion for Summary Judgment, Friday does not argue that the ALJ erred. Instead, she merely makes a variety of assertions. (D. 16 at pg. 3). In response, the Commissioner argues that the ALJ reasonably found Friday had the residual functional capacity to perform light work, primarily because his findings were supported by substantial evidence. (D. 24).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. See *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. See 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. "A negative answer at any point, other than at step 3, stops [the] inquiry and leads to a determination that the

8

claimant is not disabled." *Garfield v. Schweiker*, 732 F.2d 605, 607 fn. 2 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. In the instant case, Friday fails to allege the ALJ erred at any step in the process. Given that Friday is proceeding *pro se*, the Court will assess whether the ALJ's findings regarding Friday's fibromyalgia and epilepsy were supported by substantial evidence.

Upon review, the Court finds that the ALJ's Decision was based on substantial evidence and the ALJ reasonably found that Friday could perform light work within the confines of the RFC. The ALJ formulated an RFC that accommodated Friday's pain complaints by restricting her to occasional movement and light exertional work. He did this in spite of the fact that no doctor restricted Friday's work ability. Regarding Friday's seizures, the ALJ prohibited her from working conditions with even moderate exposure to unprotected heights and dangerous machinery. Again, he did this after noting that her seizures were controlled by medication.

As the Commissioner highlighted, the ALJ's finding is consistent with the opinions of two state agency reviewing physicians. It is appropriate for an ALJ to rely on the opinion of reviewing physicians, who are considered experts in social security disability evaluation. See *Flener v. Barnhart*, 361 F. 3d 442, 448 (7th Cir. 2004). The RFC's consistency with these opinions demonstrates that the ALJ accounted for Friday's fibromyalgia and history of seizure disorder in formulating the RFC.

Friday has not put forth an argument to support a claim that the ALJ's Decision was not supported by substantial evidence. The Court finds none. Friday points to nothing in the record to establish that the SSA should have

9

confirmed her fibromyalgia and seizure disorder were debilitating. Thus, the ALJ's Decision is affirmed.

The Court further finds that the ALJ's finding is not contingent upon a determination of Friday's credibility. He did point out that Friday's professed physical limitations were inconsistent with some activities she testified to engaging in. Ultimately, however, the ALJ based his finding on Friday's testimony and the lack of objective medical evidence in the record.

Even if the Court were to presume the ALJ found that Friday lacked credibility, any credibility determinations he made would not be overturned unless the findings were patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."[3] An ALJ must provide "enough detail and clarity to permit meaningful review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). In other words, a credibility finding "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

Just as the Court cannot re-weigh the medical evidence of record and resolve conflicts in the record, nor can the Court make its own credibility finding. "When assessing an ALJ's credibility determination, [the Court does] not . . . undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [the Court] merely examines whether the ALJ's determination was reasoned and

---

[3] SSR 96-7p was superseded by SSR 16-3p, effective March 16, 2016. The operative language the Court quotes here from SSR 96-7p, however, appears in SSR 16-3p verbatim. By either standard, the Court's analysis remains the same.

10

supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). It is only when an ALJ's determination lacks any explanation or support that it is "patently wrong." *Id.* at 413-14. That is not the case here.

The ALJ noted reasons why he found Friday's testimony regarding her limited functional capacity inconsistent. (D. 10 at pg. 24). In addition to referencing Friday's brief continuation of work after her disability began, the ALJ listed a host of other activities that Friday herself testified to engaging in. *Id.* He concluded that Friday's claims of limited functional capacity were contradicted by the medical records and her testimony. Thus, the ALJ included specific reasons for his finding of inconsistency, supported by evidence in the record. The ALJ confronted the objective medical evidence of Friday's impairments, her daily activities, and her treatment. In so doing, the ALJ provided enough clarity and detail to permit meaningful review. Therefore, the ALJ did not commit error in any potential credibility analysis he made which would require remand.

## V

For the reasons stated herein, Friday's Motion for Summary Judgment (D. 16) is DENIED and the Commissioner's Motion for Summary Affirmance (D. 23) is GRANTED. This matter is now terminated.

*It is so ordered.*

Entered on July 14, 2017.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE